Filed:  December 4, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

Nos. 94-5236(L)
(CR-93-18-WN)

---

United States of America,

Plaintiff - Appellee,

versus

Adewale Johnson Aladekoba, etc., et al,

Defendants - Appellants.

---

O R D E R

---

The Court amends its opinion filed November 17, 1997, as follows:

On page 2, section 6, line 5 -- "John S. Deros" is added as counsel for appellants.

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5236

ADEWALE JOHNSON ALADEKOBA, a/k/a
Wally, a/k/a Orlando Percival
McGregory, a/k/a Jay Johnson,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5262

ORLANDO DEMON DUGGINS, a/k/a
Curley,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 94-5263

SHAWN HICKMAN, a/k/a Fat Shawn,
Defendant-Appellant.

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 94-5371

VICTOR ADENIYI ALADEKOBA, a/k/a
TJ, a/k/a Paul Anthony Jackson,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-93-18-WN)

Argued: October 3, 1997

Decided: November 17, 1997

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge,
and HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by unpublished opin-
ion. Judge Herlong wrote the opinion, in which Chief Judge Wilkin-
son and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Robert J. Mulhern, Newark, Delaware; Douglas James
Wook, Riverdale, Maryland; Stephen James Dunn, Towson, Mary-
land, for Appellants. Jamie M. Bennett, Assistant United States Attor-
ney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Harold I.
Glaser, John S. Deros, Baltimore, Maryland, for Appellants. Lynne A. Battaglia,
United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

HERLONG, District Judge:

A jury convicted Adewale Aladekoba ("A. Aladekoba"), Victor Aladekoba ("V. Aladekoba"), Orlando Duggins ("Duggins"), and Shawn Hickman ("Hickman") (collectively, "Defendants") of violating several federal controlled-substances laws. The Defendants raise various issues on appeal. We find no grounds for reversal among their challenges to the admissibility of certain evidence, the failure to sever the case, and the district court's application of the United States Sentencing Guidelines. We agree, however, that the government failed to prove that V. Aladekoba used a firearm in violation of 18 U.S.C. § 924(c)(1), as charged in Count Six of the indictment. Accordingly, we vacate the conviction under that single count and affirm on all remaining counts.

I.

The Defendants in this case were members of a drug organization that distributed heroin throughout public housing projects in Baltimore, Maryland. A. Aladekoba ran the drug ring with Duggins and Hickman directing the sale of drugs as his lieutenants. V. Aladekoba assisted in transporting drugs to Baltimore for sale.

The evidence presented stemmed from a number of seizures of drugs, guns, and money from the Defendants. A number of witnesses told of the inner workings of the group and the group's tactics in running the ring and controlling the area. The primary seizures involved evidence recovered on August 15, 1992. On that date, A. Aladekoba was stopped by a Baltimore City Police Officer. The stop led to recovery of a sheathed weapon and handgun from the car. Thereafter, a safe containing guns, heroin, cash, and ammunition was recovered from a "stash house"**1** controlled by A. Aladekoba. Later the same

_____

**1** In this case, the "stash house" was a room within the housing projects where the conspirators kept items used during the conspiracy: drugs,

3

day, more drugs and a firearm were recovered from V. Aladekoba's apartment.

To further support its charges, the government presented acts of violence which were allegedly committed in furtherance of the conspiracy. Particularly, the jury heard testimony regarding the murder of Alexander Morrison ("Morrison"). One gun found in the stash house safe proved to be the weapon used in Morrison's murder, and testimony linked Duggins to the murder. Furthermore, the government put forth evidence that members of the drug conspiracy fire-bombed a police car and publicly battered an individual. The government supplemented this evidence with testimony from others within the drug ring who testified as to the distribution of drugs and use of firearms by the Defendants. Further testimony linked Hickman and Duggins to various drug sales for the same Aladekoba organization dating back to 1991.

Following a five-week trial, all of the Defendants involved in this case were convicted of conspiracy to possess heroin with the intent to distribute. The jury found the Defendants guilty of other individual drug and firearm charges. One defendant, Mayo Bennett, was acquitted of all charges.

Federal subject matter jurisdiction over this case is grounded in the statutes defining the various offenses and is not contested. This court finds appellate jurisdiction under 28 U.S.C. § 1291. We address the facts and standards of review in the relevant portions of the opinion.

II.

A. V. Aladekoba's Firearm Charge

The vacation of V. Aladekoba's conviction for use of a firearm in drug trafficking in light of Bailey v. United States, ___ U.S. ___, 116 S.Ct. 501 (1995), is a legal question and is reviewed de novo. United States v. King, 119 F.3d 290, 293 (4th Cir. 1997).

_____

weapons, and money. See United States v. D'Anjou , 16 F.3d 604, 607 (4th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 2754 (1994).

4

V. Aladekoba's conviction for use of a firearm in connection with a drug trafficking offense is not supported by the facts. In Count Six of the indictment, the government charged V. Aladekoba with use of a firearm in violation of 18 U.S.C. § 924(c)(1).**2** The United States Supreme Court recently held that "[a] defendant cannot be charged under [18 U.S.C.] § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. . . . Storage of a firearm, without its active employment, is not distinguishable from possession." Bailey at ___, 116 S.Ct. at 508. The jury convicted V. Aladekoba of using a firearm under this provision. While investigations into the drug conspiracy found a gun in his apartment, there was no evidence V. Aladekoba used this gun during the conspiracy under the Bailey definition. The Government concedes that there was no evidence that the gun was actively employed in this manner. However, V. Aladekoba's mere possession of the handgun may affect his sentence. U.S.S.G. § 2D1.1(b)(1); United States v. Hillary, 106 F.3d 1170, 1173 (4th Cir. 1997). Thus, we reverse the conviction under Count Six and remand the case to the trial court to determine if a new sentence is necessary.

B. Admissibility of Evidence

1. Admission of Murder Evidence

The decision to admit evidence is reviewed for an abuse of discretion. United States v. Ellis, 121 F.3d 908, 926 (4th Cir. 1997). The evidence is viewed in the light most favorable to its proponent, maximizing the probative value and minimizing any prejudicial effect. United States v. McManus, 23 F.3d 878, 882 (4th Cir. 1994), cert. denied, ___ U.S. ___, 116 S.Ct. 1839 (1996).

a. Prejudicial effect as to all Defendants

The Defendants argue that the district court abused its discretion in

_____

**2** 18 U.S.C. § 924(c)(1) reads, in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.

admitting evidence of a murder allegedly committed by Duggins upon the order of A. Aladekoba. They contend that an overt act is not necessary to a charge of conspiracy and, therefore, it was not relevant to the government's case. FED. R. EVID. 401-02. Furthermore, the Defendants argue that even if the evidence was relevant, it was more prejudicial than probative. See FED. R. EVID. 403. The government counters that the evidence directly supported charges against Duggins and A. Aladekoba that they used a firearm in connection with drug trafficking. Also, the government argues that the evidence linked Duggins inextricably with the conspiracy. The government finally contends that the evidence presented showed that Duggins committed the murder in furtherance of the conspiracy.

The district court did not abuse its discretion in admitting the murder evidence. A trial court may admit evidence that does not directly establish an element of the offense charged, in order to "complete the story of the crime on trial." United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 939 (1995). Under this analysis, evidence of an uncharged murder is admissible if it is "part-and-parcel of the criminal enterprise." United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996). The government presented evidence that Duggins acquired a gun of the same type used in the murder. Furthermore, the government also submitted testimony that A. Aladekoba surrendered control of the gun to various individuals. Finally, a witness testified that Duggins committed the murder and left the scene in a car with A. Aladekoba. The government also presented evidence that the gun was used before and after the murder in different conspiracy activities. This evidence was admissible as a part of the vast activity associated with the conspiracy.

Even if this evidence was not relevant, its admission was, at most, harmless error. The Defendants cite United States v. Murray, 103 F.3d 310 (3d Cir. 1997), as authority that the district court should have disallowed the murder evidence. In Murray, the United States Court of Appeals for the Third Circuit held that admission of prior murder evidence was not admissible in a subsequent murder trial. Id. at 320. However, the court went on to find: "In contrast, we believe that the erroneous admission of Stukes' testimony [concerning the murder] was harmless with respect to the drug charges." Id. Thus, the erroneous admission of the prior murder evidence only reversed the

6

pending murder conviction. The court noted that the drug conspiracy charges were not affected because of the Government's "substantially stronger evidence in support of the drug charges." Id. Similarly, in this case, the government presented strong evidence of the drug conspiracy. It is not likely that the jury was influenced by the murder evidence. Therefore, at most, any error by the district court was harmless.

b. Character evidence as to Duggins

The Defendants further object to the admission of the murder evidence in regard to Duggins. Evidence of prior crimes or bad acts is not admissible to prove the defendant's bad character. FED. R. EVID. 404(b). The Defendants argue that the murder is particular evidence of Duggins' character because he is the one specifically named as the culprit. However, the evidence is still admissible under this challenge using the above analysis. See Chin, 83 F.3d at 88. Thus, the district court did not err in admitting the evidence of the Morrison murder.

2. Admission of Firebombing/Beating Evidence

This Court reviews a trial court's ruling on a motion for mistrial under the abuse of discretion standard. United States v. Ford, 88 F.3d 1350, 1361 (4th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 496 (1996).

The district court did not abuse its discretion in refusing to grant a mistrial. A criminal defendant deserves a mistrial only if he was prejudiced by the trial proceedings. United States v. Hayden, 85 F.3d 153, 157 (4th Cir. 1996). The Defendants claim that they suffered prejudice from testimony regarding the firebombing of a police vehicle and the public beating of an individual. Though implicitly attributed to some of the Defendants, the Government did not unequivocally link these incidents to the Defendants. While there was significant testimony regarding the bombing, the beating evidence consisted of only a few questions of one witness. In light of the substantial evidence presented in this five-week trial, the trial court simply instructed the jury to disregard this evidence and later denied a request for a mistrial.

7

This court considers four factors in determining whether prejudice warrants a mistrial: (1) whether the verdict showed the jury could make an individualized determination of guilt; (2) whether the court scrutinized the manner in which the evidence reached the jury; (3) whether the state of the record and extent of evidence against the defendant supports the verdict; and (4) whether proper curative instructions were given by the trial court. United States v. Dorsey, 45 F.3d 809, 817-18 (4th Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 2631 (1995). If these factors are satisfied, there is no abuse of discretion.

The jury demonstrated its ability to make individualized determinations by acquitting one of the Defendants, Mayo Bennett. The trial court also scrutinized the evidence of this case. While evidence of the firebombing was presented, the Defendants claim that the government never connected them with this evidence. The government's witness, Reginald Jones, was prepared to make the connection. However, because of other testimony Jones may have given regarding A. Aladekoba, counsel for A. Aladekoba moved to exclude Jones' testimony. After the district court tentatively granted the motion, the government withdrew Jones as a witness. Thus, no link was made. This effort by the district court demonstrates that it scrutinized all evidence that went before the jury.

Furthermore, as stated above, the trial record is replete with evidence against the Defendants. The evidence before the jury clearly supported the verdict. Finally, the trial court gave a thorough curative instruction. The court instructed the jury to disregard the evidence of the firebombing and the beating. Considering the length of the trial and the amount of evidence presented, it was not an abuse of discretion for the court to give these curative instructions and refuse the Defendants' request for a mistrial.

3. Search of A. Aladekoba's Vehicle

The Defendants do not challenge any facts or inferences concerning the vehicle search. They challenge only the legal finding of probable cause and reasonable suspicion. Accordingly, we review this issue de novo. Ornelas v. United States, ___ U.S. ___, ___, 116 S.Ct. 1657, 1659 (1996).

8

The district court did not err in admitting evidence seized from defendant A. Aladekoba's car following a traffic stop. A traffic stop by a police officer is a seizure under the purview of the Fourth Amendment. Whren v. United States, ___ U.S. ___, ___, 116 S.Ct. 1769, 1772 (1996). A vehicle is subject to a traffic stop if an officer has a "reasonable articulable suspicion" that criminal activity is taking place. Smith v. Ohio, 494 U.S. 541, 542 (1990); Terry v. Ohio, 392 U.S. 1, 20 (1968). In this court, "reasonable suspicion" is "a common-sensical proposition . . . crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). The objective standard is whether a reasonable police officer could have stopped the vehicle for an articulable suspicion. Whren, ___ U.S. at ___, 116 S.Ct. at 1772. Of course, any evidence obtained from a traffic stop in violation of the Fourth Amendment would be inadmissible as "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 484 (1963).

In this case, it is clear the officer had a reasonable articulable suspicion prior to stopping A. Aladekoba's vehicle. At 1:00 a.m. on August 15, 1992, the officer received a call reporting a suspicious black vehicle with two males on East Baltimore Street. The report gave a specific license plate number. When the officer reported immediately to this street, he saw a black vehicle occupied by two men fitting the given description. Though the license plate number did not match the one reported, the officer continued to follow the vehicle. He reported that the occupants seemed nervous and continued to look back at the police "paddy wagon" while circling the block. At one point, they failed to stop completely at a stop sign and turned without signaling. The car made several turns and then attempted to enter Interstate Highway 83. The officer stopped the vehicle on the ramp leading to the highway. The Defendants contend this scenario does not constitute an articulable reasonable suspicion. While we disagree with the Defendants' position, this determination is not necessary due to A. Aladekoba's conduct following the traffic stop.

Even if no reasonable suspicion existed, the arrest of A. Aladekoba and resulting search of his vehicle was permissible. The exclusionary rule is inapplicable when the nexus of the illegal police activity and the attainment of the evidence is sufficiently attenuated so that any

9

taint from the illegality is removed. <u>Wong Sun</u>, 371 U.S. at 417. Following the stop, A. Aladekoba failed to get out of the vehicle. He then allegedly attempted to assault the officer. After being maced by the officer, Aladekoba fled from the car and the officer. During the chase, A. Aladekoba stopped, drew his gun, and turned to fire on the officer. The officer fired and hit A. Aladekoba, injuring him. The car was searched after this incident. A. Aladekoba's conduct following the initial stop constituted sufficient probable cause for his arrest. Accordingly, even if the stop were illegal, A. Aladekoba's behavior attenuated the taint of any illegality in the initial stop. <u>See United States v. Sheppard</u>, 901 F.2d 1230, 1235 (5th Cir. 1990) (citing cases where flight following initial illegal traffic stop attenuated any taint). Thus, the arrest of A. Aladekoba and resulting search of his car were proper.

4. Proof of Prior Drug Conviction of Hickman

The Court reviews a district court's determination as to admissibility of evidence under an abuse of discretion standard. <u>United States v. Sanchez</u>, 118 F.3d 192, 195 (4th Cir. 1997).

Hickman's prior conviction was properly admitted into evidence. Hickman was convicted in Baltimore state court of possession of certain drugs found in a Baltimore apartment on July 3, 1991. Drugs seized from the same apartment were used as evidence to support the conspiracy charge.**3** Evidence of other crimes or acts may not be admitted to show a defendant's character. FED. R. EVID. 404(b). As with all evidence, evidence of such prior crimes must not be more prejudicial than probative. FED. R. EVID. 403. Though Hickman argues this was inadmissible character evidence, the government contends that this was direct evidence of the conspiracy charge against Hickman. We agree that the conviction showed that Hickman possessed the same drugs that were involved in the conspiracy. As such, the conviction was direct evidence in support of the charged crime and, thus, was not an attempt to attack his character. However, we find that the prior conviction was admissible even under Rule 404(b).

_____

**3** The conspiracy charge encompassed a period from June 1991 to August 1992. (Appellants' J. Br. at 40.)

10

A criminal defendant's prior acts are admissible under Rule 404(b) if they are "(1) relevant to an issue other than character; (2) necessary; and (3) reliable." <u>Sanchez</u>, 118 F.3d at 195. This court gives these elements an inclusive interpretation. <u>Id.</u> Hickman's prior drug charge was relevant to his knowledge of the drug trade. <u>See id.</u> It also was a necessary part of the government's case against Hickman. Due to the mass of evidence against the Defendants, including Hickman, the government needed to show that the conspiracy was not the work of novices. Finally, a prior conviction from a state court is inherently reliable. Therefore, the district court properly relied on the prior conviction.

The Defendants also assert that the evidence of Hickman's prior crime was more prejudicial than probative. Courts must exclude evidence if its prejudicial effect substantially outweighs its probative value. FED. R. EVID. 403. The prior conviction evidence was probative as a necessary link between Hickman and the apartment where police seized the conspiracy's drugs. Any prejudicial effect against Hickman was minimal and did not outweigh the probative value of the evidence. Thus, the district court properly admitted the prior conviction evidence.

C. <u>Severance of Hickman's Charges</u>

We review a district court's denial of a motion for severance under an abuse of discretion standard. <u>United States v. Ford</u>, 88 F.3d 1350, 1361 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 117 S.Ct. 496 (1996).

The district court did not abuse its discretion in refusing to sever the trial. Hickman was charged with one count in the multi-count indictment: the primary conspiracy charge. Severance is required where a defendant is prejudiced by a joint trial, as justice requires. FED. R. CRIM. PRO. 14. This judicial determination should weigh potential prejudice against the interests of judicial economy. <u>United States v. Samuels</u>, 970 F.2d 1312, 1314 (4th Cir. 1992). Under this analysis, Hickman's case was properly tried with the other conspiracy Defendants.

Several principles show Hickman's trial was proper. First, Defendants who are indicted together should be tried together. <u>United States</u>

11

v. Hall, 93 F.3d 126, 131 (4th Cir. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1087 (1997). The importance of this point is emphasized for Defendants who participated in the same conspiracy. United States v. Tipton, 90 F.3d 861, 883 (4th Cir. 1996). The defendant who seeks severance must show that his joint trial would so prejudice him "that a miscarriage of justice would result." United States v. Williams, 10 F.3d 1070, 1080 (4th Cir. 1993), cert. denied, 513 U.S. 926 (1994). While Hickman claims he was only a minor player, witnesses testified he was a "main lieutenant" in charge of one of the buildings under the drug ring.

Other factors warranted a joint trial. The conspiracy charges took five weeks to try and involved two dozen witnesses. A separate trial for Hickman would have required presenting much of this evidence a second time. See Zafiro v. United States, 506 U.S. 534, 537 (1993) (efficiency important factor for joint trials). Furthermore, in acquitting one of the original defendants, the jury showed the absence of prejudice. See Ford, 88 F.3d at 1361 (noting lack of prejudice in a joint trial where jury acquitted some defendants). Thus, the district court did not abuse its discretion in denying Hickman's motion to sever.

D. District Court's Sentencing

We review a sentencing court's decisions regarding drug quantities for clear error. United States v. Fletcher, 74 F.3d 49, 55 (4th Cir.), cert. denied, ___ U.S. ___, 117 S.Ct. 157 (1996). Determinations about roles in crimes involve an application of the guidelines to the facts, and those determinations are consequently reviewed for clear error. United States v. Daugherty, 874 F.2d 213, 214 (4th Cir. 1989).

1. V. Aladekoba's base level

V. Aladekoba argues that the district court erred in attributing the entire amount of drugs distributed by the conspiracy, between 10 and 30 kilograms, to him as a base level for sentencing. Under the United States Sentencing Guidelines for sentences involving joint criminal activity, the base offense level is determined on the basis of all reasonably foreseeable acts and omissions of others in furtherance of the joint activity. U.S.S.G. § 1B1.3(a)(1)(B); United States v. McHan, 101 F.3d 1027, 1043 (4th Cir. 1996). V. Aladekoba argues that the

12

district court improperly attributed all of the conspiracy's drugs to his sentence based on his conspiracy conviction. This is not the case. During the sentencing phase of the case, District Judge Nickerson noted his reasoning for V. Aladekoba's sentence:

> [The total drug amount attributed to V. Aladekoba] related to the evidence regarding the size of the operation . . . , the fact there were gunmen, . . . safehouses, lieutenants, . . . lifestyle situations involving luxury apartments, cars, . . . 2,000-capsule deliveries a couple of times a week, an operation going on for about 13 months. These were at least among the evidentiary matters that I determined indicated to me that a 10- to 30-kilogram amount was a conservative amount. It certainly is supported by a preponderance of the evidence.

(J.A. at 1015-16.) Thus, the district judge properly attributed specific conspiracy activities to V. Aladekoba in determining his base amount. The court acted within its discretion in determining V. Aladekoba's base level for sentencing.

2. V. Aladekoba's increase for role in conspiracy

V. Aladekoba's increased sentence was proper. Under the Sentencing Guidelines, a sentence may be enhanced when the defendant plays an "aggravating role" in the crime. U.S.S.G. § 3B1.1. Specifically, enhancement is warranted where the defendant is an "organizer, leader, manager, or supervisor in any criminal activity." Id. Prior to V. Aladekoba's sentencing, the United States Sentencing Commission ruled that enhancement under this section requires management of people, not mere "assets." Id. at Application Note 2 (effective Nov. 1, 1993). V. Aladekoba claims there was no testimony or evidence to show that he directed any people in the conspiracy. The government agrees with this standard. However, it argues that there is ample evidence showing V. Aladekoba's control of others in the drug ring.

V. Aladekoba's primary role was in packaging and distributing heroin capsules. To accomplish this task, there was evidence that he directed a female accomplice, Fidelia, in this job. Furthermore, the government informant, Alan Webb, testified that V. Aladekoba

13

instructed Webb to transport heroin to Baltimore where it was to be sold. Aside from these instances of control over people, V. Aladekoba wielded wide control over many aspects of the conspiracy. He oversaw shipments of luxury cars from Nigeria, and he instructed Webb to launder large sums of money for travel purposes. From this evidence, it is clear that V. Aladekoba supervised people and assets, warranting the increased sentence. Accordingly, the district court committed no error in this sentencing.

3. Duggins' sentence

Duggins contests his sentence on three separate grounds. He initially claims the trial court erred in basing the sentence on the murder evidence because it was irrelevant conduct. Duggins also maintains that use of the murder evidence in his sentencing violated the Due Process clause of the Fourteenth Amendment. Finally, Duggins argues the district court attributed an improper amount of heroin to his sentence.

a. Murder as irrelevant conduct

The court did not commit clear error in considering the murder evidence. A sentencing court may rely upon any information in determining where, within the appropriate guideline range, a defendant may be sentenced. 18 U.S.C. § 3661. Furthermore, the court may consider any relevant and reliable evidence when sentencing, including hearsay. United States v. Jones, 31 F.3d 1304, 1316 (4th Cir. 1994). The admissibility of the murder evidence has already been discussed. Thus, because Duggins' sentence was within the statutory guideline for his conspiracy conviction,**4** the specific factors considered in reaching that sentence do not constitute clear error.

_____

**4** The guidelines indicated Duggins was to be sentenced at a base level of 262-327 months for the amount, upon which a mandatory minimum of 60 months was to be added for the conspiracy charge. (J.A. at 998.) He was sentenced to 360 total months, well within the guideline maximum of 387 months.

b. Murder evidence as violation of due process

Duggins further claims that basing his sentence, in part, on the murder charge violated his rights under the Fourteenth Amendment. As noted above, once Duggins was convicted of the conspiracy, the judge may use any factor to determine sentencing within the guidelines. The admissibility of the murder evidence, as already discussed, was proper. Thus, the district court properly considered the murder evidence in sentencing Duggins.

Furthermore, Duggins incorrectly asserts his constitutional rights. The Due Process clause of the Fourteenth Amendment, in pertinent part, reads: "nor shall any State deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. This amendment protects individuals from actions by the states, not the Federal Government. Accordingly, "actions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment." District of Columbia v. Carter, 409 U.S. 418, 423-24 (1973). It is the Due Process clause of the Fifth Amendment that defends citizens from unconstitutional abuse by the Federal Government. U.S. CONST. amend. V. Thus, Duggins' due process challenge under the Fourteenth Amendment is unfounded.

In this same vein, Duggins also challenges the credibility of the witnesses who implicated him in the Morrison murder. The trial court's consideration of the testimony at trial was not clear error. The appellate courts must "give due regard to the opportunity of the district court to judge the credibility of the witnesses." 18 U.S.C. § 3742(e). Furthermore, the credibility of witnesses is a determination for the jury, not the appellate courts. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989); see also Bell v. Evatt, 72 F.3d 421, 435 (4th Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 2533 (1996). The district judge was fully warranted in relying on this testimony following a jury's consideration and verdict of guilty.

c. Duggins' base level

Duggins argues that the district court should not have attributed all drugs involved in the conspiracy to his base level. Duggins was present for only four of the thirteen months in which the conspiracy took

15

place. For jointly undertaken criminal activity, the Sentencing Guide-lines instruct that a defendant's base offense level shall be based upon "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). Thus, "drug conspirators should be punished in a manner commensurate with the scale of the conspiracy, rather than their personal participation in the conspiracy." United States v. Campbell, 935 F.2d 39, 45 (4th Cir.), cert. denied, 502 U.S. 929 (1991).

Duggins bases his argument primarily on the time he was involved in the conspiracy. This is of no consequence. Under the above precedent, an entire conspiracy's drug inventory may be applied to each individual in the conspiracy for sentencing. Duggins' involvement with the conspiracy, however short, revealed to him the vast expanse of this drug empire. The full amount of the drugs attributed to Duggins was reasonably foreseeable for someone with his detailed knowledge of the conspiracy's activities. In considering this point, the Seventh Circuit held that "conduct of co-conspirators -- even past conduct -- can be considered `reasonably foreseeable' to a particular defendant if that defendant has demonstrated a substantial degree of commitment to the conspiracy's objectives." United States v. Edwards, 945 F.2d 1387 (7th Cir. 1991), cert. denied sub nom. Martin v. United States, ___ U.S. ___, 112 S.Ct. 1590 (1992). Thus, it was not clear error for the district court to apply the drug ring's entire inventory when sentencing co-conspirator Duggins.

III.

The only meritorious issue on appeal is V. Aladekoba's firearm charge under 18 U.S.C. § 924(c). Under Bailey, the district court improperly allowed the conviction of V. Aladekoba under Count Six to stand. Thus, we vacate this portion of the case and remand for reconsideration of the sentencing of V. Aladekoba in accordance with this opinion. Finding no other reversible error, we affirm on all remaining counts.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

16