**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 96-4215

CARLOS SANCHEZ,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-95-338-A)

Argued: April 10, 1997

Decided: June 30, 1997

Before RUSSELL and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Phillips wrote the opin-
ion, in which Judge Russell and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Joel Barry Simberg, MOFFITT, ZWERLING & KEM-
LER, P.C., Alexandria, Virginia, for Appellant. James L. Trump,
Assistant United States Attorney, Alexandria, Virginia, for Appellee.
**ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria,
Virginia, for Appellee.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Carlos Sanchez was convicted, following a jury trial, of conspiracy to possess with intent to distribute cocaine and to distribute cocaine, in violation of 21 U.S.C. § 846, and with distribution of cocaine, in violation of 21 U.S.C. § 841. He challenges five rulings of the district court and seeks reversal of his conviction. We find no prejudicial error among those assigned and affirm his conviction.

I

The evidence in the light most favorable to the Government revealed the following facts. Sanchez first met Alberto Espinosa in 1991 or 1992 at an Arlington, Virginia, restaurant where Espinosa worked. Espinosa, Sanchez, and others often discussed their various drug trafficking businesses at the restaurant. During this time, Sanchez and Espinosa would occasionally provide drugs for one another when supply was short. Espinosa participated in four specific transactions with Sanchez in 1992; on two of those occasions Sanchez supplied Espinosa with 125 grams of cocaine, and on two occasions Espinosa provided Sanchez with the same quantity.

Sometime in 1992, Espinosa left the country for 14 months and when he returned he reestablished contact with Sanchez. The two conducted more cocaine transactions in 1994, in and around Arlington. Espinosa participated in four specific drug transactions with Sanchez after Espinosa's return to the United States. Two of those transactions involved half-kilograms of cocaine.

In 1994, Sanchez introduced Espinosa to his brother-in-law, Orlando, and told Espinosa that Orlando could provide him with cocaine for distribution. Orlando and Espinosa conducted three multi-kilogram deals together and Sanchez received a commission of $250 per kilogram for arranging the deals. Orlando would not sell cocaine directly to Sanchez because Sanchez took too long to pay, so after arranging the deals, Sanchez purchased his cocaine from Espinosa.

2

Another participant in these drug operations was Amparo Lindner, a Colombian woman who helped Espinosa by delivering drugs and picking up money. Lindner delivered cocaine to Sanchez from Espinosa on three occasions from October 1994, until the end of the year. Lindner was also a cocaine dealer on her own behalf. She had, on three occasions, sold cocaine to Virgil Ayala. In 1995, when Espinosa was in need of a new source of cocaine, Lindner introduced Ayala to Espinosa. Espinosa planned to buy five kilograms of cocaine from Ayala. However, unbeknownst to Espinosa, Ayala was an undercover Drug Enforcement Agency (DEA) agent and he arrested Espinosa in January 1995.

In the meantime, Sanchez himself was still dealing cocaine which he obtained from other drug dealers. In 1995, he contacted Margaret Everett, the wife of an acquaintance, to sell her cocaine. Sanchez had learned from Jon Rivera that Everett was in the market for 250 grams of cocaine. Sanchez and Everett spoke twice to arrange the drug deal and Rivera was also involved in the planning. On January 24, 1995, Everett and Sanchez, with Rivera as a middleman, exchanged $6000 for 189 grams of cocaine. Unbeknownst to Sanchez, Everett was in fact an undercover DEA agent and Rivera was a confidential informant cooperating with law enforcement.

On February 25, 1995, Sanchez was arrested while using a pay phone. At the time of his arrest, Sanchez was standing near a car in which he had just been a passenger. A search of that car revealed a plastic bag containing two ounces, or sixty-seven grams, of cocaine.

His trial and conviction on the charges indicated then followed, and Sanchez now appeals.

II

Sanchez first argues that the district court improperly admitted evidence of illegal acts not charged in the conspiracy, in violation of Federal Rules of Evidence 404(b) and 403. Specifically, the government introduced evidence that Sanchez had conducted drug deals with Espinosa as early as 1992 and that the defendant was arrested near a car containing 67 grams of cocaine. According to Sanchez, these pieces of evidence did not directly prove the conspiracy charged. San-

3

chez argues that the 1992 drug sales fall outside the time frame charged in the conspiracy. He further argues that there is no evidence that the cocaine found in the car at the time of his arrest came from suppliers involved in the charged conspiracy. Therefore, he argues, both pieces of evidence should have been excluded under Rule 404(b). We hold that the district court did not abuse its discretion in admitting the contested evidence at Sanchez's trial. See United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991) (employing the abuse of discretion standard of review for admissibility of "other acts" evidence).

Rule 404(b) provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

We have long treated 404(b) as an inclusionary rule, permitting introduction of all evidence except that which proves only criminal disposition. See Mark, 943 F.2d at 447. We have also made clear that 404(b)'s specific list of acceptable grounds for admission of evidence is not exhaustive. See United States v. Rawle , 845 F.2d 1244, 1247 (4th Cir. 1988). Rather, evidence is admissible under 404(b) if it is "(1) relevant to an issue other than character, (2) necessary, and (3) reliable." Id.; see also Mark, 943 F.2d at 447.

In this case, given our very inclusive interpretation of Rule 404(b), the contested pieces of evidence easily satisfy the test for admissibility on several grounds. Sanchez's prior dealings with Espinosa prove his knowledge of the drug trade and suggest that he was an intentional, rather than unwitting, participant in the conspiracy. The early drug deals also establish the mechanics of the indicted conspiracy and

4

show the relationships between the parties. Similarly, the cocaine found near Sanchez at the time of his arrest is relevant to his knowledge of the drug trade and the mechanics of his distribution scheme. As the government points out, the cocaine found was a package and quantity similar to that sold in the indicted conspiracy, and the arrest and cocaine seizure happened within the time-frame charged in the conspiracy. The arrest also occurred within the geographic area of the conspiracy. The presence of the cocaine helped prove that Sanchez was involved in a distribution network when he was arrested.[1]

Further, all the evidence at issue is admissible to prove Sanchez's criminal intent. A not-guilty plea puts one's intent at issue and thereby makes relevant evidence of similar prior crimes when that evidence proves criminal intent. See Mark, 943 F.2d at 448; United States v. Brewer, 1 F.3d 1430, 1434 (4th Cir. 1993). Moreover, although Sanchez never formally sought to use an entrapment defense, he repeatedly suggested that he had been set up by the informant. During argument and examination of witnesses, Sanchez hinted to the jury that he had been a reluctant participant in the deal with Everett and that he "was not a drug dealer." The evidence of the prior and subsequent drug transactions, therefore, supported the government's position that Sanchez was intentionally engaged in the illegal drug activity charged. Sanchez's suggestion that he had been set up made the government's evidence of other deals relevant, indeed necessary, to its case.

Although we conclude that the contested evidence is admissible under Rule 404(b), we must still assess it under Rule 403, which excludes evidence the probative value of which is substantially out-

_____

[1] Sanchez argues that the cocaine seized during his arrest is not relevant because the government cannot show that the drugs came from, or were going to be sold to, another member of the conspiracy. We do not agree. First, we note that the cocaine was in so many ways similar to the cocaine the conspirators sold that a jury could reasonably infer it came from the same network of drug dealing. Second, the indictment charges that Sanchez conspired with persons "known and unknown" to the grand jury. We do not agree that, simply because no evidence was presented about the source of and planned buyer for the January 24 drugs, those drugs cannot have been part of the charged conspiracy.

weighed by its prejudicial effect.**2** In this case, the prior cocaine deals and the cocaine seized at the time of arrest are both clearly probative. While the evidence is undeniably "prejudicial" in the way that all inculpatory evidence is, it is no more so than the tape recordings of drug deals and other strong evidence introduced against Sanchez at trial. The strong probative value of the contested evidence is simply not "substantially outweighed." Therefore, we conclude that the district court did not abuse its discretion by admitting the evidence at issue.

III

Sanchez argues that the district court impermissibly limited his cross-examination of Agents Everett and Ayala regarding Jon Rivera, a confidential informant in this case. The jury heard testimony that Rivera arranged Sanchez's January 24 deal with Agent Everett and that he was paid for his cooperation. Sanchez was allowed some cross-examination of the agents regarding Rivera's involvement, but limitations were placed upon that line of questioning. Sanchez argues that he was improperly prohibited from asking two specific questions regarding Rivera. He sought to ask the agents whether Rivera had violated his cooperation agreement with the government by conducting a personal, non-investigative drug deal while he was a paid informant. He also sought to ask how much Rivera had been paid for his participation in the January 24 deal. The court did not allow either of these lines of questioning because neither was relevant to any issue in the case. We review limitations placed upon cross-examination by the district court for abuse of discretion. See United States v. McMillon, 14 F.3d 948, 955-56 (4th Cir. 1994).

For several reasons, Sanchez's arguments regarding the limitations placed on his right to cross-examine the agents about Rivera are without merit. It is important to note at the outset that Rivera did not tes-

_____

**2** Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

6

tify against Sanchez; the government did not call Rivera as a witness and, although Rivera was under subpoena and in the courthouse throughout the trial, Sanchez also did not call him to testify. Therefore, Rivera's general dishonesty and credibility, to which details of his cooperation might be relevant, were not at issue in this case.

The evidence sought by Sanchez was also not relevant to any other issue properly before the jury. Sanchez argues that he wanted to introduce the evidence of Rivera's broken agreement with the government to show that the government did not have firm control over Rivera; Sanchez would then argue that Rivera improperly set him up to do the January 24 deal with Everett. This contention is not persuasive. Rivera's involvement in no way undermines the government's proof of the cocaine conspiracy and the January 24 drug transaction. Sanchez's account of being set up by Rivera is only legally relevant in the context of a formal entrapment defense. However, Sanchez, on several different occasions, made clear to the court and the government that he was not raising an entrapment defense. The district court did not, therefore, abuse its discretion by prohibiting the defense from introducing an entrapment theory "through the back door" by raising questions about Rivera.

Similarly, we can think of no way in which the amount of money paid to Rivera was relevant to an issue at trial. Sanchez, in neither his brief nor oral argument, has offered any suggestion about the relevance of that evidence to his defense. We are therefore satisfied that the district court did not abuse its discretion in limiting Sanchez's questions regarding Rivera's cooperation with the government.

IV

Sanchez asserts that he should have been allowed to cross-examine Amparo Lindner, a cooperating co-conspirator, about a polygraph test she had failed in the course of her cooperation and that he should have been allowed to mention the failed test in his arguments to the jury. The district court did not allow Sanchez to explore the polygraph test at all on the grounds that it was not relevant to Sanchez's case and that polygraph evidence is inadmissible in this circuit. The court ruled correctly.

7

The rule of this circuit is that polygraph evidence is never admissible to impeach the credibility of a witness. See United States v. Chambers, 985 F.2d 1263, 1270 (4th Cir. 1993); United States v. A & S Council Oil Co., 947 F.2d 1128, 1133 (4th Cir. 1991). This is so whether the government or the defendant is seeking to introduce the evidence. See A & S Council, 947 F.2d at 1134 (refusing to create an exception to the general prohibition against polygraph evidence for cases in which such evidence is exculpatory).

Sanchez correctly points out, and we have expressly noted, see A & S Council, 947 F.2d at 1134 & n.4, that some other circuits have begun to retreat from comparable rules of absolute exclusion. The rule remains, however, in this circuit, and is binding upon us in this case, as the district court rightly found it binding upon that court.[3] We observe that in any event we would find any error in excluding this evidence harmless as having no significant relevance to any material issue going to Sanchez's guilt.

V

Sanchez next argues that the government improperly vouched for the credibility of its witnesses in its closing arguments. There having been no objection to the alleged vouching at trial, we review only for plain error. See United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995) (reviewing closing arguments for plain error when defense failed to object at trial); see generally United States v. Olano, 507 U.S. 725 (1992) (addressing conduct of plain error review under Fed. R. Crim. P. 52(b)).

Reviewing for plain error under Olano's directive, we find none.

At trial, Sanchez sought to impeach Alberto Espinosa, a cooperating co-conspirator, with statements Espinosa had made to DEA agents following his arrest and guilty plea. Sanchez's counsel repeatedly

_____

[3] In United States v. Toth, No. 95-5191, 91 F.3d 136 (4th Cir. July 31, 1996) (unpub'd), we recently suggested that it is possible to change our prohibition against polygraph evidence without approval of the en banc court in light of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). However, we declined to reach the issue in that case.

showed Espinosa copies of DEA reports of the interviews in an effort to refresh his recollection, but did not introduce those reports into evidence. During this cross-examination, Sanchez made misleading references about the content of those reports and was corrected by the court for those references. After Sanchez's questioning of Espinosa, the government moved the DEA reports at issue into evidence, with no objection from Sanchez.

During closing arguments, Sanchez told the jury at least twice that Espinosa was a liar and that the government knew he lied and ignored it. In support of these assertions, Sanchez asked the jury to look at the inconsistencies in the DEA reports that were now in evidence. In its closing rebuttal, the government also invited the jury to look at the DEA reports to which the defense had referred. The government then said, "[t]he United States moved them into evidence because there is nothing to hide in these reports." The government went on to admit that there were inconsistencies in Espinosa's stories but said that those small errors were natural given the detail Espinosa was being asked to recall. It is the statement that the reports contain nothing to hide which Sanchez challenges as improper vouching.

It is impermissible for a prosecutor to vouch for or bolster the testimony of government witnesses in arguments to the jury. United States v. Lewis, 10 F.3d 1086, 1089 (4th Cir. 1993). Vouching occurs when a prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury. See id. While vouching and bolstering are always inappropriate, "[i]mproper remarks during closing argument do not always mandate retrial. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993) (internal quotation marks and citations omitted).

In addressing a claim of improper vouching we must first decide whether the comments made in fact constituted vouching or bolstering. If so, we must next determine whether the comments prejudicially affected the defendant by considering (1) the degree to which the comments could have misled the jury; (2) whether the comments

9

were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comments; and (4) whether the comments were deliberately made to divert the jury's attention. See Mitchell, 1 F.3d at 241; Adam, 70 F.3d at 780.

We hold that the single challenged comment about the DEA investigative reports did not constitute any sort of error, plain or otherwise. First, the comment could not properly be considered "vouching." In making it, the prosecutor did not suggest any personal belief about the credibility of any witness or even the credibility of its evidence. Rather the prosecutor simply said that it introduced the DEA reports, after several misstatements of their contents by Sanchez, because the reports "had nothing to hide." See, e.g. , Lewis, 10 F.3d 1086 (finding a government statement about investigative procedures during closing argument did not constitute improper vouching). The government acknowledged that the reports contained discrepancies and invited the jury to make up its own mind about the reports and Espinosa's credibility. Sanchez points us to no case in which similar comments have been deemed improper vouching.

Even were we to accept that this single comment did constitute a form of forbidden "vouching," it could not have unfairly prejudiced Sanchez, much less seriously affected the "fairness, integrity or public reputation of judicial proceedings" so as to constitute plain error under Rule 52(b)'s stringent standard. See Olano, 507 U.S. at 736. The comment expressly invited jurors to make their own assessment after closely reviewing the very piece of evidence at issue. It was a single comment in an otherwise unobjectionable argument by the government. The proof of Sanchez's guilt was quite strong and the comment being contested was, at best, peripheral to the credibility of one single source of incriminating evidence. We are satisfied that it could not unfairly have affected the jury's decision in any way given the other persuasive evidence against Sanchez.

VI

Sanchez finally challenges the instructions given to the jury regarding the presumption of innocence. He argues that by including in those instructions a statement that a defendant begins a criminal trial with a "clean slate," the court unfairly minimized the depth and

10

importance of the presumption of innocence. We find no merit in that contention.

The instruction in whole, as largely derived from§ 12.10 of Devit's Federal Jury Practice and Instructions, was:

> Now, as you know, this is a criminal case. There are three basic rules about a criminal case that you must keep in mind. First, the defendant is presumed innocent until proven guilty. The indictment against the defendant brought by the government is only an accusation, nothing more. It is not proof of guilt or anything else. The defendant, therefore, starts out with a clean slate.
>
> Second, the burden of proof is on the government until the very end of the case. The defendant has no burden to prove his innocence or to present any evidence or to testify. . . .
>
> Third, the government must prove the defendant's guilt beyond a reasonable doubt. And I will give you further instructions on this point later. But bear in mind, in this respect, that a criminal case is different from a civil case.

J. A. at 81.

We can find no error in these instructions. Sanchez points to no decision finding error in comparable "clean slate" references. Indeed, instructions incorporating such a reference have been expressly upheld by several other circuits. See United States v. Littlefield, 840 F.2d 143, 146 (1st Cir. 1988); United States v. Walker, 861 F.2d 810, 813 nn. 7 & 8 (5th Cir. 1988); United States v. Hollister, 746 F.2d 420, 424 (8th Cir. 1984); United States v. Cummings, 468 F.2d 274, 280 (9th Cir. 1972). We agree with those circuits that the reference in the context made could not constitute reversible error.

AFFIRMED

11