**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAIME RAMON CARDENAS, a/k/a
Teofilo Coronel Tapia,
*Defendant-Appellant.*

No. 00-4585

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

ENRIQUE RAMIREZ,
*Defendant-Appellant.*

No. 00-4587

Appeals from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-99-62-V)

Submitted: April 20, 2001

Decided: May 10, 2001

Before WILLIAMS, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Randolph Marshall Lee, LAW OFFICES OF RANDOLPH MAR-SHALL LEE, Charlotte, North Carolina; Joseph T. Vodnoy, Joseph F. Walsh, Los Angeles, California, for Appellants. Mark T. Calloway, United States Attorney, Gretchen C.F. Shappert, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Jaime Ramon Cardenas and Enrique Ramirez appeal their convictions for conspiracy with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (1994). We affirm.

I

Following his arrest on cocaine charges, Christopher Moss informed investigators that he also dealt in methamphetamine. He identified David Walker as one of his suppliers and said that Walker previously had accepted vehicles as payment for drug debts. Moss testified that Walker was interested in trading methamphetamine for Moss' 1995 Chevrolet truck. Walker testified that he, in turn, intended to obtain the methamphetamine from Cardenas, from whom he had bought drugs in the past. Previously, on nine or ten occasions, Walker had paid Cardenas for drugs with vehicles. This time, Cardenas was interested in trading methamphetamines for the Moss truck.

Walker and Moss negotiated the exchange of Moss' truck for fifteen grams of methamphetamine. Some of the negotiations took place by telephone. Moss recorded those conversations, which were introduced at trial. On September 29, 1999, Walker took Moss a sample

of the methamphetamine he intended to supply Moss. Moss found the sample satisfactory, and he agreed to consummate the deal the next day.

On September 30, Cardenas gave Walker the drugs. Cardenas was driving a car in which Ramirez was the passenger. Cardenas and Ramirez followed Walker to a convenience store to await his return with the truck. Walker then left in his car to go to the Moss residence. On his way, he hid the methamphetamine beside a pine tree on a road near Moss' home. Walker left his car at the Moss residence, where he picked up the truck and its title. Walker then drove the truck to the convenience store, where he met the car occupied by Cardenas and Ramirez. The men proceeded to the parking lot of a textile mill, where Cardenas accepted the truck as payment for the methamphetamine. Ramirez drove the truck to a movie theater parking lot. Cardenas drove Walker back to the Moss home, then drove to the theater parking lot, where Ramirez was waiting. Walker and Moss then left to pick up the drugs that Walker had hidden.

Officers stopped Ramirez and Cardenas soon after they left the movie theater parking lot. When questioned, Ramirez falsely stated that someone named Juan had asked him to drive the truck. However, he did not know Juan's last name. Ramirez, Cardenas, and Walker were charged in a one-count indictment with conspiracy to distribute methamphetamine. Walker pleaded guilty and testified at trial, as did Moss. Ramirez and Cardenas now challenge their convictions.

II

Cardenas claims that the district court's admission of certain "prior bad acts" evidence violated Fed. R. Evid. 404(b). Specifically, Cardenas contends that admitting the following evidence was unduly prejudicial: (1) testimony that he sold Walker approximately 200 pounds of marijuana beginning in 1995; (2) testimony that he sold cocaine and methamphetamine to Walker not only on September 30, 1999, but on four other occasions that year; (3) testimony that in 1996 and 1997, Cardenas stored large quantities of marijuana and methamphetamines at the residence of Brian Duncan; (4) Duncan's testimony that he was arrested in 1997 for possession of sixty-five pounds of mari-

juana, which Cardenas had supplied to him; and (5) in January 1998, Cardenas was arrested in possession of eighteen pounds of marijuana.

Because there was no objection at trial to admission of the evidence, our review is for plain error. *United States v. Olano*, 507 U.S. 725, 731-32 (1993). To find plain error: (1) there must be error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *Id.* at 733-37; *United States v. Rolle*, 204 F.3d 133, 138 (4th Cir. 2000).

Rule 404(b) permits evidence of other crimes, wrongs, or acts to be introduced to establish motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. Fed. R. Evid. 404(b). Rule 404(b) is an inclusionary rule, excluding only evidence whose sole purpose is to prove criminal disposition. *United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997). "[E]vidence is admissible under [Rule] 404(b) if it is (1) relevant to an issue other than character, (2) necessary, and (3) reliable." *Id.* (internal quotation marks omitted). Moreover, under Rule 404(b), relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." *United States v. Bailey*, 990 F.2d 119, 122 (4th Cir. 1993).

Here, the evidence complained of was admissible. It was relevant to the issue of Cardenas' intent to distribute drugs. Further, the testimony was necessary because it completed the story of the scope of the conspiracy. *See United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994). The testimony was reliable and, in light of the testimony of police officers, Moss, and Walker concerning activities surrounding the September 30 drug deal, was not unduly prejudicial. In short, there was no plain error in admitting the evidence.

III

Cardenas next argues that the district court erred when it failed to instruct the jury that he could not be convicted if the jury found that he had conspired only with Moss, whom Cardenas characterizes as a government agent. Because such an instruction was not requested at trial, *Olano* requires review for plain error. The indictment charged

that Walker, Ramirez, Cardenas, and others participated in the conspiracy. As there was clearly a conspiratorial relationship among these three men, there was no need for the court to instruct the jury that there can be no conspiracy between a single defendant and a government agent.

IV

Cardenas claims that he was denied his Sixth Amendment right to the effective assistance of counsel because his attorney failed to object to the admission of the Rule 404(b) evidence and failed to request a jury instruction that Cardenas could not be convicted if he conspired only with a government agent. We note our finding that the court committed no plain error in admitting the evidence in question or refusing the jury instruction. Thus, the record does not conclusively demonstrate that counsel was ineffective, and the Sixth Amendment claim should be brought, if at all, in a collateral proceeding pursuant to 28 U.S.C.A. § 2255 (West Supp. 2000). *See United States v. White*, 238 F.3d 537, 539 n.1 (4th Cir. 2001).

V

Officers searching the car Cardenas was driving on September 30 seized from the glove compartment a newspaper article concerning the arrest of methamphetamine traffickers in an unrelated case. Counsel objected to introduction of the article as irrelevant and prejudicial. The district court determined that the article was admissible. The court gave a limiting instruction, telling the jury that the article was admitted only for the purpose of shedding light on the knowledge or intent of any person the jury found had possession of or access to the article.

The article was a minor piece of evidence when viewed in light of the overwhelming evidence against Cardenas and Ramirez. This, coupled with the court's limiting instruction, renders any error in admitting the error harmless. *United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997) (standard of review); *United States v. Hernandez*, 975 F.2d 1035, 1039 (4th Cir. 1992).

## VI

Ramirez challenges the sufficiency of the evidence against him. We will uphold a jury's verdict of guilt if there is substantial evidence in the record to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942). In determining whether the evidence is substantial, we view the evidence in the light most favorable to the Government, and inquire whether there is evidence that a reasonable trier of fact could accept as adequate and sufficient to support a finding of guilt beyond a reasonable doubt. *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). In evaluating the sufficiency of the evidence, we do not review the credibility of witnesses, and we assume that the jury resolved all contradictions in the evidence in the Government's favor. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998), *cert. denied*, 525 U.S. 1141 (1999).

To obtain a conspiracy conviction under 21 U.S.C. § 846, the Government must prove (1) an agreement between two or more people to engage in conduct that violates a federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) his knowing and voluntary participation in the conspiracy. *United States v. Wilson*, 135 F.3d 291, 306 (4th Cir. 1998). A defendant's connection to the conspiracy need only be slight to support a conviction, *Burgos*, 94 F.3d at 861, and the slight connection may include a variety of conduct besides selling narcotics. *Id.* at 859. Nor is it necessary that the defendant know all the co-conspirators or all the details of the conspiracy. *Id.* at 861.

Here, Walker testified that Ramirez was present on seven or eight occasions when Walker picked up drugs from Cardenas, and that the drugs always were in plain view of Ramirez. Ramirez was a necessary part of the September 30, 1999, drug transaction because he drove the truck that Cardenas bought with methamphetamines. His lying to officers about driving the truck for someone named Juan suggests that he was well aware of the illegal transaction. We conclude that the evidence was sufficient to sustain the Ramirez conviction.

## VII

We accordingly affirm the convictions. We dispense with oral argument because the facts and legal contentions are adequately pre-

sented in the materials before us and argument would not aid the decisional process.

*AFFIRMED*