Rehearing granted, June 1, 2005

**PUBLISHED**

# UNITED STATES OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

RONALD COLLINS,
            *Defendant-Appellant.*

No. 03-4848

UNITED STATES OF AMERICA,
            *Plaintiff-Appellant,*

v.

RONALD COLLINS,
            *Defendant-Appellee.*

No. 03-4895

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CR-03-180)

Argued: September 30, 2004

Decided: March 2, 2005

Before MICHAEL and DUNCAN, Circuit Judges, and
Roger W. TITUS, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed in part and vacated and remanded in part by published opinion. Judge Titus wrote the opinion, in which Judge Michael and Judge Duncan joined.

_____

**COUNSEL**

**ARGUED:** Matthew Alan Wartel, Alexandria, Virginia, for Appellant/Cross-appellee. Michael James Elston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-appellant. **ON BRIEF:** Paul J. McNulty, United States Attorney, LeDora Knight, Assistant United States Attorney, Alexandria, Virginia, for Appellee/Cross- appellant.

---

**OPINION**

TITUS, District Judge:

Ronald Collins appeals his conviction for unlawfully distributing fifty (50) or more grams of a mixture containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and maintaining and controlling a room or enclosure for the purpose of unlawfully storing, distributing, and using a controlled substance in violation of 21 U.S.C. § 856(a)(2). Collins also appeals his sentence for the above convictions. In addition, the Government cross-appeals, arguing that the district court erroneously sentenced Collins.

Collins was indicted for his role in a larger drug conspiracy. Some of the members of that conspiracy testified against Collins at trial, including his nephew, Lionel Kearse. The thrust of the case for the defense was an attempt to discredit the various witnesses and informants who testified for the government. The jury, presumably finding at least some of the informants credible, found Collins guilty on both counts.

In his appeal, Collins raises five issues. First, he argues that the government attorney engaged in prosecutorial misconduct by making an improper "vouching" statement during her rebuttal closing argument. Second, he argues that the Government made a late disclosure of *Brady* material. Third, he argues that 21 U.S.C. § 841 is unconstitutional. Fourth, he argues that the district court gave improper jury instructions. Fifth, he argues that, under *Apprendi* and *Blakely*, his sentence is unconstitutional, as the facts used to sentence him were

not determined by a jury beyond a reasonable doubt. Each of his issues on appeal will be considered and disposed of *seriatim*.

*Improper Argument*

Collins' first argument on appeal is that the prosecuting attorney made an improper statement during her rebuttal closing argument, unconstitutionally tainting the outcome of the case. As this issue raises a question of law, the appropriate standard of review is *de novo*. *United States v. Cheek*, 94 F.3d 136, 140 (4th Cir. 1996). The allegedly improper statement made by the prosecutor is as follows:

> That [plea] agreement is a contract between them [the cooperators] and the United States, which means that they have certain functions, and we have certain functions. Their function is to tell the truth. Each witness who got up there said that his job or responsibility was to tell the truth.
>
> The government is always seeking to determine whether they are telling the truth, and we do not take lightly the fact that we have an agreement with the defendant - with each one of those witnesses where they are supposed to tell the truth.

J.A. 505-06. As conceded at oral argument, it is not this entire soliloquy which is arguably inappropriate. The allegedly improper statement is the first sentence of the second paragraph, where the prosecutor stated that the "government is always seeking to determine whether [a cooperator is] telling the truth[.]"

The question then presented is first, whether this statement constitutes improper vouching for the credibility of a witness and, if so, whether those "remarks or conduct prejudicially affected [the Defendant's] substantial rights so as to deprive him of a fair trial." *United States v. Scheetz*, 293 F.3d 175, 185 (4th Cir. 2002).

Collins argues, and the Government agrees, that "[i]t is impermissible for a prosecutor to indicate her personal belief in the credibility of Government witnesses or to elicit one witness' opinion that another

witness has told the truth." *United States v. Hayes*, 322 F.3d 792, 800 (4th Cir. 2003) (citing *United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993)); *see also Berger v. United States*, 295 U.S. 78, 88 (1935). The disagreement between Collins and the Government arises from each party's interpretation of the aforementioned excerpt from the prosecutor's rebuttal closing argument. Collins contends that the statement suggests to the jury that "the Government official was checking to see whether the witnesses were telling the truth in accordance with their plea agreements." Appellant's Brief at 19. The Government disputes this interpretation, arguing that the prosecutor was merely focusing the jury's attention on the terms of the plea agreement. Appellee's Brief at 23-24. The district court, during the trial, agreed with the Government's interpretation, explaining to the parties that "[i]t's fair game for both sides to address [the credibility of the witnesses]. What [the prosecutor] was doing, I think, was focusing to raise attention on the plea agreement. . . . And that's perfectly appropriate." J.A. 508.

As could be expected considering the ubiquitous nature of cooperating witnesses in criminal trials, the issue of a prosecutor referring to plea agreements at trial has been considered by most circuits. A Tenth Circuit opinion very effectively delineated what comments are appropriate and what comments are improper, explaining that

> [p]resenting evidence on a witness' obligation to testify truthfully pursuant to an agreement with the government and arguing that this gives the witness a strong motivation to tell the truth is not, by itself, improper vouching. . . . Use of the 'truthfulness' portions of [a plea agreement] becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony.

*United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990) (citations omitted). Other circuits are in agreement with the Tenth. For example, the Ninth Circuit cautioned that "[t]he prosecution may not portray itself as a guarantor of truthfulness." *United States v. Roberts*, 618 F.2d 530, 537 (9th Cir. 1980). Nor may the Government "give jurors the impression that the prosecutor is carefully monitoring the testimony of the cooperating witness to make sure that the latter is not

stretching the facts[.]" *Id.* at 536 (quoting *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1150 (2d Cir. 1978) (Friendly, J. concurring)).

The relevant case from this Circuit is *United States v. Henderson*, 717 F.2d 135 (4th Cir. 1983) *cert. denied* 465 U.S. 1009 (1984). After canvassing the views of other circuits, this Court adhered to the views of the Seventh Circuit, expressed in *United States v. Hedman*, 630 F.2d 1184, 1198-99 (7th Cir. 1980) and *United States v. Craig*, 573 513, 519 (7th Cir. 1978) *cert. denied* 439 U.S. 820 (1978), and found no improprieties in "permitting the government to introduce the terms of [the cooperator's] plea bargain during the government's case in chief." *Henderson*, 717 F.2d at 138. *Henderson*, however, is not directly on point because the statement made in the current controversy was part of the prosecutor's rebuttal closing argument, rather than during the Government's case in chief. The Government argues, in effect, that there is no distinction between the two methods of referring to the plea agreements. *See* Appellee's Brief at 24. We disagree.

By its own language, *Henderson* differentiates the current situation from the introduction of the terms of a plea agreement on direct or redirect examination. In explaining why the Government did not improperly draw attention to the plea agreement, this Court found relevant the fact that "Henderson ma[de] no claim that the prosecutor made improper use of the plea bargain promise of truthfulness in closing argument." *Henderson*, 717 F.2d at 138. Thus, potentially prejudicial statements made during closing arguments required closer scrutiny than the eliciting of information about the plea agreement during the prosecutor's case in chief.

This distinction is an important one because the potential for impermissible vouching is greater during an attorney's soliloquy to the jury than during an attorney's interaction with a witness. In the former posture the attorney has greater leeway to develop her own thoughts and convey those concepts to the jury. Therefore, we do not find *Henderson* to be directly on point. Rather, applying the rationale of *Bowie*, *Roberts* and *Arroyo-Angulo*, we find the prosecutor's argument in this case, at a stage when there is a heightened concern about

impermissible vouching, either crossed the line, or, at best, was a close call.

However, regardless of the side of the line on which this statement falls, we conclude that it did not "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Scheetz*, 293 F.3d at 185 (citing *United States v. Morsley*, 64 F.3d 907, 913 (4th Cir. 1995)). Even if we were to find that the prosecutor's statement implied that the government could insure the credibility of the witness, "[s]uch impermissible vouching is not necessarily reversible error." *United States v. Hayes*, 322 F.3d 792, 800 (4th Cir. 2003). Rather, a court makes a reversible error determination on the basis of four factors: "(1) the degree to which the comments could have misled the jury; (2) whether the comments were isolated or extensive; (3) the strength of proof of guilt absent the inappropriate comments; and (4) whether the comments were deliberately made to divert the jury's attention." *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir. 1997) (citing *United States v. Mitchell*, 1 F.3d 235, 241 (4th Cir. 1993); *United States v. Adam*, 70 F.3d 776, 780 (4th Cir. 1995)).

First, it is unlikely, considering the overall context in which the statement was made, that the prosecutor's statement misled the jury. As this Court found relevant in *Henderson*, "[t]he trial judge instructed the jury on the caution necessary in evaluating testimony given pursuant to a plea bargain." *Henderson*, 717 F.2d at 138. A curative instruction, as indicated in *Henderson*, prevents the misleading of the jury. An instruction similar to the one given in *Henderson* was given to the jury in this case after the allegedly improper statement, thus effectively sanitizing any potential vouching concern. *See* Transcript of Closing Argument at 434-39 (The relevant instructions given to the jury were as follows: "You are the sole judges of the credibility of each of the witnesses called to testify. . . . [T]here has been testimony from several government witnesses who plead guilty after entering into an agreement with the government to testify. . . . You in turn may accept the testimony of such a witness . . . however, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness. . . . [T]he testimony of a witness who has been promised that the witness will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness. You should

scrutinize such testimony closely to determine whether or not it is colored in such a way as to place guilt upon the defendant in order to further the witness's own interests[.]"). These instructions, coming immediately following the allegedly improper vouching by the prosecutor, clearly eliminated any prejudice to Collins. Thus, the first *Sanchez* factor must be resolved in favor of the Government.

The second *Sanchez* factor strongly militates against a finding of reversible error. As distilled at oral argument, the problematic statement was actually only one clause of a sentence in the middle of the rebuttal closing argument. As noted above, not only was the statement sufficiently sanitized by the district court's subsequent jury instruction, it was also an isolated, rather than pervasive or extensive, comment.

With regard to the third *Sanchez* factor, Collins asserts that the Government's case was centered around the cooperating witnesses who signed plea agreements. Appellant's Brief at 21; *see also* J.A. 81, 347 (listing the witnesses, eight of whom signed plea agreements with the Government or were promised immunity). Therefore, Collins argues, this factor weighs in favor of a finding of prosecutorial misconduct because the jury's verdict was primarily based on a credibility determination of those witnesses, allegedly buttressed by the improper statement in the Government's rebuttal closing argument. Collins is correct that much of the evidence presented was the testimony of cooperating witnesses. *See* Appellant's Brief at 4 ("[T]he Government relied entirely upon historical information from cooperating witnesses[.]"). The Court also agrees with Collins that if vouching did occur, then it improperly buttressed the credibility of all cooperating witnesses. Considering the Government's reliance on testimony from numerous cooperating witnesses, it is clear that if those witnesses were not deemed credible by the jury, then the Government's case would have been weaker. Accordingly, this factor, as Collins contends, does weigh towards a finding of reversible error.

Finally, the fourth *Sanchez* factor militates against a finding of reversible error. Nothing in the record suggests that the comments were "deliberately made to divert the jury's attention," and the Defendant does not so contend.

Considering all the factors enunciated in *Sanchez*, even accepting Collins' argument that the third factor weighs towards a finding of prosecutorial misconduct, we conclude that it is outweighed by the other three factors, leading to the conclusion that there was no reversible error.

*Late Disclosure of Brady Evidence*

Collins' next argument for a reversal of the conviction is an alleged violation of the *Brady* doctrine. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Supreme Court later "held that the duty to disclose such evidence is applicable even though there has been no request by the accused[.]" *Strickler v. Greene*, 527 U.S. 263, 280 (1999)(citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)). Collins moved to dismiss the charges against him, arguing that the Government had disclosed the identities of non-testifying confidential informants only a few days prior to commencement of the trial, even though he requested this information a month before the trial. As a result, Collins could locate only two of the six confidential sources, and he contends that this "falls within the ambit of *Brady*." Appellant's Brief at 23. For two reasons, we cannot agree.

First, "evidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995) (citing *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). Considering the record, no such reasonable probability exists in this case. There is nothing to support Collins' assertion that these informants would have produced exculpatory information. Indeed, from a reading of the record, his counsel's assertions could be interpreted to suggest that these informants would not produce evidence favorable to him. *See* J.A. at 72-74 (defense counsel proffering that "these witnesses do not mention Mr. Collins. . . . [T]hese are witnesses that came forward and provided information to the police that never mentioned my client. They described who was involved in the conspiracy."). In short, we agree with the district court that "[t]here

are probably hundreds of people who could" testify that they purchased drugs from an individual other than Collins. *Id.* Second, we agree with the district court that "a motion to dismiss is not the proper vehicle [for a late *Brady* disclosure]. At best, a motion to get more time to talk to these people." *Id.* at 71. No such motion was made. Collins' motion sought dismissal of the charges, and, when his motion was denied, he did not seek a continuance.

*Unconstitutionality of 21 U.S.C. § 841*

Collins argues that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the penalty provisions of 21 U.S.C. § 841[1] are unconstitutional and, because they cannot be severed from the remainder of the statute, the entire state is facially invalid. This argument is foreclosed by *United States v. McAllister*, 272 F.3d 228 (4th Cir. 2001), where this Court unambiguously concluded that "*Apprendi* does not render § 841 facially unconstitutional[.]" *Id.* at 234. "A decision of a panel of this court becomes the law of the circuit and is binding on other panels unless it is overruled by a subsequent en banc opinion of this court or a superseding contrary decision of the Supreme Court." *Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993). Therefore, Collins cannot succeed on his claim that 21 U.S.C. § 841 is unconstitutional.

*Jury Charge Regarding Drug Quantity*

During the jury deliberations, the district court instructed the jury that "[t]he amount of drugs applies to the entire group of conspirators. In other words, it's a conspiracy to distribute 50 grams or more of crack cocaine. That's what the charge is. So the amount applies to the conspiracy, to the group." J.A. 533. Collins argues that because the district court did not require the jury to find that the drug activity of the conspiracy was reasonably foreseeable to him, the instruction was

---

[1] 21 U.S.C. § 841(b) prescribes the penalties for manufacturing, distributing, or dispensing controlled substances; or possessing controlled substances with the intent to engage in the above activities. This subsection determines the length of incarceration for a violation by considering both the type of controlled substance and the weight of the substance.

in violation of *Pinkerton*. *See Pinkerton v. United States*, 328 U.S. 640 (1946).

According to Fourth Circuit case law, "we review the district court's decision to omit the 'reasonably foreseeable' language from its *Pinkerton* instruction for an abuse of discretion." *United States v. Aramony*, 88 F.3d 1369, 1380 (4th Cir. 1996). This Circuit, in *Aramony* and in *United States v. Chorman*, 910 F.2d 102 (4th Cir. 1990), found that "a *Pinkerton* instruction that omitted the 'reasonably foreseeable' language [was] correct[.]" *Aramony*, 88 F.3d at 1381. In this case, however, the district court omitted both the "reasonably foreseeable" language and instructions directing the jury that they may only find Collins responsible for the acts of co-conspirators if those acts occurred during, and in furtherance of, the conspiracy. Therefore, reliance on *Chorman* and *Aramony* is misplaced. Nevertheless, this omission was harmless because a jury could have reasonably concluded that the evidence adduced at trial was sufficient to hold Collins personally liable for the distribution of more than 50 grams of crack cocaine. *See* J.A. at 160 (direct testimony of Mr. Kearse explaining Collins's sales of crack cocaine purchased from New York).

*Constitutionality of Sentencing Guidelines*

Collins makes another argument based on *Apprendi* and, in his supplemental brief, contends that *Blakely v. Washington*, 124 S. Ct. 2531 (2004) offers further support for his position. Defendant argues that any factor that increases the Sentencing Guidelines range must be submitted to a jury and proved beyond a reasonable doubt.

Subsequent to the oral argument in this case, the Supreme Court issued a decision in *United States v. Booker*, No. 04-104, 2005 WL 50108 (U.S. Jan. 12, 2005) which directly implicates Collins' argument. In *Booker*, a majority of the Court determined that the mandatory Sentencing Guidelines regime, which allowed a judge to make findings of fact that could increase a sentence beyond the maximum amount based on the facts found by a jury at trial, violates the Sixth Amendment. *Booker*, No. 04-104, Justice Stevens' Opinion of the Court.

After arriving at this conclusion, the Supreme Court then determined the appropriate remedy. Rather than engrafting onto the exist-

ing system the requirement that all facts that increase an individual's sentence be submitted to a jury and proved beyond a reasonable doubt, the Court held that Congress' intention would be furthered by making the Guidelines system advisory. *Id.* Justice Breyer's Opinion for the Court at 3, 5-6.B Because Collins specifically sought to preserve his right to argue the unconstitutionality of his sentence, anticipating the Supreme Court's decision in *Booker*, we will now consider the validity of the district court's sentence in light of this new precedent.

This Court has already had occasion to consider a direct appeal raising *Booker* issues and has now articulated the manner in which this Circuit will handle the interplay between Justice Stevens' Opinion on the merits and Justice Breyer's Opinion on the proper remedy. In *United States v. Hughes*, No. 03-4172 (4th Cir. January 24, 2005) this Court dealt with the issue, now facing all courts of appeal, of the validity of a sentence issued by a district court under the old sentencing regime (mandatory use of the Guidelines). As succinctly stated in *Hughes*, Justice Breyer's Opinion for the Court determined that "Congress would have preferred a solution that rendered the guidelines advisory and restored discretion to courts to impose sentences within the range prescribed by the statutes of conviction, as long as those sentences are reasonable." *Hughes*, slip op. at 6 (citations omitted). Therefore, "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing . . . [and] [t]he courts of appeals review [those] sentencing decisions for unreasonableness." *Booker*, Justice Breyer's Opinion for the Court at 21-22.

This mandate from the Supreme Court presents the courts of appeal with two options: decide whether a district court's sentence, under the old regime, was reasonable, or remand the case and direct the district court to resentence the Defendant in accordance with *Booker*. In *Hughes*, this Court emphatically chose the second option, holding that "to leave standing [the] sentence imposed under the mandatory guideline regime, we have no doubt, is to place in jeopardy 'the fairness, integrity or public reputation of judicial proceedings.'" *Hughes*, slip op. at 10 (citing *United States v. Hastings*, 134 F.3d 235, 239 (4th Cir. 1998)). *Hughes* further elaborated on the need to remand cases

involving sentences issued pursuant to the mandatory Guidelines, explaining that

> a sentence has yet to be imposed under a regime in which the guidelines are treated as advisory. To leave standing this sentence simply because it may happen to fall within the range of reasonableness unquestionably impugns the fairness, integrity, or public reputation of judicial proceedings. Indeed, the determination of reasonableness depends not only on an evaluation of the actual sentence imposed but also the method employed in determining it.

*Hughes*, slip op. at 10 n.8. Thus, because we "simply d[id] not know how the district court would have sentenced [the defendant] had it been operating under the regime established by *Booker*[,]" *id.* at 15 n.8, the sentence was vacated and remanded for resentencing. *Id.* at 17.

In this case, the Superseding Indictment charged Collins with knowingly, intentionally, and unlawfully distributing fifty (50) grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). J.A. 15. The jury entered a verdict of guilty on that charge. J.A. 519, 534-35. The sentencing provision of § 841 provides that an individual who is found to be in violation of § 841(a) involving fifty (50) grams or more of crack cocaine shall be sentenced to a minimum of ten (10) years and a maximum of life, assuming that no death or serious bodily injury results from the defendant's involvement with the controlled substance. 21 U.S.C. § 841(b). The relevant Sentencing Guideline, for a violation of 21 U.S.C. § 841(a)(1) involving fifty (50) grams of crack cocaine, sets forth an Offense Level of 32. United States Sentencing Commission, *Guidelines Manual*, § 2D1.1(c)(4) (2004).[2] Based on an Offense Level of 32, and a Criminal History Category of I, the Guideline range would be 121-151 months.

The district court did not, however, apply a Guideline range of 121-151 months. Instead, the district court agreed with the presen-

---

[2]The sentencing in this case occurred on October 24, 2003. The 2003 Sentencing Guidelines also set forth an offense level of 32 for a violation of § 841(a)(1) involving fifty (50) grams of crack cocaine.

tence report which calculated the Offense Level as 34. J.A. 573-75. The presentence report, prepared by an officer in the United States Probation Office, explained that Collins was being held responsible for the distribution of 349.9 grams of crack cocaine. J.A. 599. This finding led Probation to recommend an Offense Level of 34 (a Guideline range of 151-188 months), which is what the Guidelines require for violations of § 841(a) where the Defendant is deemed responsible for 150 to 500 grams of crack cocaine. The district court, although not explicitly stated in the record, adopted the presentence report and sentenced Collins to 151 months. J.A. 578-79. Thus, it was the district court, not the jury, that found Collins to be responsible for 349.9 grams of crack cocaine. Pursuant to *Apprendi*, *Blakely*, and now *Booker*, Collins argues that this sentence should be set aside because the district court made a finding of fact that resulted in a longer sentence than the maximum authorized by the facts found by the jury alone. *See Booker*, Opinion of Justice Stevens at 20.[3]

Following the precedent set in *Hughes*, Collins is correct. Collins' sentence, because it was determined by a district court under the pre-*Booker* sentencing regime, must be vacated and remanded for sentencing consistent with this opinion.[4]

---

[3]In fact, this case is factually analogous to the situation in *Booker*. In both cases, the Defendant was charged with a violation of § 841(a)(1) and found guilty on this count. Due to findings by the district court, however, both Booker and Collins received Offense Levels which are reserved for involvement with at least 500 grams of crack cocaine and 150 grams of crack cocaine respectively. *Booker*, Opinion of Justice Stevens at 2-3, 10-11 (explaining that the district judge found Booker to possess an additional 566 grams of crack cocaine, garnering an Offense Level of 36 and, with a Criminal History Category of VI, changing the guideline range from 210-262 months to 360 months to life).

[4]In addition to the various issues appealed by Collins, the Government cross-appealed the district court's determination of Collins' criminal history category. While the criminal history determination of the district court is open to question in light of the presumption of regularity, *Parke v. Raley*, 506 U.S. 20, 30-31 (1992), and its application in *United States v. Gray*, 177 F.3d 86, 90-91 (1st Cir. 1999), we need not reach the issue because, following *Booker* and *Hughes*, the sentence in its entirety is vacated and remanded.

*AFFIRMED IN PART AND VACATED*
*AND REMANDED IN PART*