**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 12-4983**

—————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

BENJAMIN DEVON GOSS,

        Defendant – Appellant.

—————

Appeal from the United States District Court for the District of South Carolina, at Charleston.   Richard M. Gergel, District Judge.   (2:11-cr-00730-RMG-1)

—————

Submitted:  May 22, 2013        Decided:  August 12, 2013

—————

Before SHEDD, DUNCAN, and DIAZ, Circuit Judges.

—————

Affirmed by unpublished per curiam opinion.

—————

Ann Briks Walsh, Assistant Federal Public Defender, Charleston, South Carolina, Kimberly H. Albro, Research and Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant.   William N. Nettles, United States Attorney, Columbia, South Carolina, Nathan S. Williams, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

—————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal court convicted Benjamin Devon Goss of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(g)(2) and 924(e). On appeal, Goss contends that the district court erred in denying his motion to suppress the firearm. Goss also asserts that the district court abused its discretion when it failed to grant a mistrial after alleged improper bolstering by a government witness.

For the reasons that follow, we affirm.

I.

A.

On October 4, 2010, Charleston, South Carolina, Police Department ("CPD") officers were dispatched to a disturbance in downtown Charleston. Dispatch relayed the 911 call, which stated that there was a disturbance involving a gun between several black males wearing black and red clothing. Arriving first at the scene, CPD Officer Carlos Torres observed a group of people, which included Goss, crossing the street directly in front of his police cruiser. Goss looked at Torres and attempted to fix his waistband, revealing what appeared to be the grip of a black handgun.

Torres got out of his patrol cruiser and told Goss to "stop" and "get on the ground." J.A. 231. CPD Officer Robert

2

Wilbanks arrived on the scene just as Torres exited his patrol car. Goss began to walk away and Torres told him: "stop, you are under arrest." Id. When Wilbanks got out of his car, he heard Torres yell "gun, gun, gun" and saw Goss begin to flee. J.A. 343. As Torres gave chase, he radioed that he was in pursuit of an armed black male wearing a red shirt, and other officers soon joined. While in pursuit, Torres saw Goss drop a black pistol between two bushes. Torres and Wilbanks eventually caught and detained Goss, at which point Torres told Officer Robert Hazelton where he had seen Goss toss the firearm. Hazelton went to the area described and found a .380 caliber handgun at the base of a bush. The officers placed Goss under arrest.[1]

B.

The government filed a one-count indictment charging Goss with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(g)(2) and 924(e). Prior to trial, Goss moved to suppress the weapon, arguing that the relayed 911 call did not provide Torres with reasonable suspicion sufficient to justify the initial attempted stop.

---

[1] Goss was charged with Unlawful Possession of Handgun by Felon, Resisting Arrest, Unlawful Carrying of Handgun, and Possession of Marijuana.

After conducting a suppression hearing, the district court denied the motion. The court did not make any explicit findings of fact.

At trial, the government presented the testimony of Torres and other officers at the scene. The government also offered the testimony of Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Agent Robert Callahan, who briefly detailed his role as a federal agent and his level of involvement with state law enforcement in this case.

Goss moved to strike Callahan's testimony and for a mistrial, arguing that the testimony served no purpose but to improperly bolster the testimony of Officer Torres, who, Goss submits, presented conflicting testimony at the suppression hearing and at trial regarding his description of the person with the firearm.[2] The district court granted the motion to strike, and instructed the jury to disregard the testimony in its entirety. However, the district court denied Goss's request

---

[2] At the suppression hearing, Torres did in fact give conflicting testimony as to what color shirt Goss was wearing when Torres saw him with the gun on the evening in question. See J.A. 77-80. But Torres also testified that the individual he arrested that evening--Goss--was the same individual he saw pass in front of his patrol car with the gun in his waistband. Torres further testified that he never lost sight of Goss while chasing him.

4

for a mistrial, concluding that the testimony did not prejudice Goss.

A jury convicted Goss on the one-count indictment. The district court sentenced Goss to one-hundred twenty months' imprisonment. Goss filed a timely appeal.

## II.

### A.

We first consider Goss's challenge to the district court's denial of the motion to suppress, reviewing the district court court's legal conclusions de novo and its findings of fact for clear error. Ornelas v. United States, 517 U.S. 690, 699 (1996). In this case, however, the district court made no findings of fact. "It is, of course, the better practice for the district court to make such findings, but where the district court fails to do so, we assume the district court construed the evidence in the light most favorable to the party who prevails on the suppression motion below. . . . On review, we do the same." United States v. Cardwell, 433 F.3d 378, 388 (4th Cir. 2005). Moreover, "[t]his court has recognized that when later proceedings confirm the correctness of the district court's findings, we can affirm a pre-trial suppression ruling based on such evidence." United States v. Gray, 491 F.3d 138, 148 (4th

5

Cir. 2007). See also United States v. Han, 74 F.3d 537, 539 (4th Cir. 1996).

Goss contends that Officer Torres's initial command for him to "stop" was unlawful because the officer had no articulable reason to suspect that Goss was involved in criminal activity. Goss argues that at the time Torres attempted to stop him, the officer knew only that an anonymous 911 caller had reported a disturbance involving several black men wearing black and red clothing, possibly involving weapons. This uncorroborated 911 call, Goss submits, was insufficient to allow Torres to stop him. Goss also argues that Torres could not stop him even after seeing what the officer believed to be the grip of a black handgun in Goss's waistband because Torres could not have known whether Goss was prohibited from possessing a concealed firearm under South Carolina Code § 16-23-30.[3]

While acknowledging that Officer Torres needed only reasonable suspicion to justify an investigatory stop, the district court nevertheless ruled that the government had satisfied the more stringent probable cause standard. We agree

---

[3] South Carolina Code § 16-23-30 prohibits the possession of a handgun by certain enumerated classes of persons, including, inter alia, those who have been convicted of a crime of violence, members of a subversive organizations, and minors.

6

with the district court's legal analysis and therefore reject Goss's Fourth Amendment claim.

The underlying command of the Fourth Amendment is that all government searches and seizures must be reasonable, Wilson v. Arkansas, 514 U.S. 927, 931 (1995), and "reasonable suspicion" is the standard that justifies an investigatory stop when an officer believes that criminal activity may be afoot, Terry v. Ohio, 392 U.S. 1, 21 (1968). Under that standard, a police officer may conduct a brief investigatory stop if he has "a reasonable suspicion grounded in specific and articulable facts that the person he stopped has been or is about to be involved in a crime." United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987) (quoting United States v. Hensley, 469 U.S. 221, 227 (1985)). So long as such "reasonable suspicion of illegal activity" exists, an investigatory stop does not require a finding of probable cause. United States v. Harris, 39 F.3d 1262, 1269 (4th Cir. 1994).

Relatedly, the existence of probable cause constitutes "the minimum justification necessary to make the kind of intrusion involved in an arrest 'reasonable' under the Fourth Amendment." Dunaway v. New York, 442 U.S. 200, 208 (1979). Probable cause exists when the facts and circumstances known to the officer "would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." United States v.

<u>Garcia</u>, 848 F.2d 58, 59-60 (4th Cir. 1988) (internal quotations omitted).  In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest.  <u>United States v. Al-Talib</u>, 55 F.3d 923, 931 (4th Cir. 1995) (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 230-231 (1983)).  Probable cause must be supported by more than a mere suspicion, but evidence sufficient to convict is not required.  <u>Wong Sun v. United States</u>, 371 U.S. 471, 479 (1963).

We first conclude that Torres had reasonable suspicion to stop Goss.  While in his police cruiser, Torres saw Goss walk directly in front of him.  Goss attempted to adjust something in his waistband, at which point Torres saw what appeared to be the grip of a black handgun.  This, together with the fact that Goss fit the admittedly general description provided by the 911 dispatch, created objectively reasonable suspicion of illegal activity that justified an investigatory stop.[4]

Goss's reliance on <u>Florida v. J.L.</u>, 529 U.S. 266 (2000), is misplaced.  In <u>J.L.</u>, the officers' suspicion that J.L. was carrying a weapon arose solely from an anonymous call made from

---

[4] In any case, as the district court observed, because Goss fled, Torres's initial attempt to stop him did not constitute a "seizure" for purposes of the Fourth Amendment.  <u>See</u> <u>California v. Hodari D</u>, 499 U.S. 621, 626 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement.")

8

an unknown location.  Id.  The Supreme Court explained that "an anonymous tip that a person is carrying a gun [is not], without more, sufficient to justify a police officer's stop and frisk of that person."  Id. at 268.  Here, however, in contrast to the officers in J.L., Torres's reasonable suspicion that Goss was armed was based not just on an anonymous tip, but also on the officer's personal observations.[5]

Next, we conclude that Torres had probable cause to arrest Goss.  After disobeying several orders from Torres to stop and get on the ground, Goss fled.  During the ensuing chase, Torres observed Goss toss a gun into the bushes.  Shortly thereafter, Goss was captured and detained.  Torres told other officers where Goss had tossed the gun, and that was the exact location where they found it.  Based on these facts, Torres had ample probable cause to then arrest Goss.

## B.

We next consider Goss's contention that the district court erred by refusing to declare a mistrial on the ground that ATF agent Robert Callahan's testimony prejudiced Goss's right to a

---

[5] It does not matter whether Torres actually knew that Goss had committed a crime.  To justify the stop, Torres needed only a reasonable suspicion that criminal activity was afoot, not proof beyond a reasonable doubt.  As the government notes in its brief, under South Carolina law it is unlawful (with certain enumerated exceptions) "for anyone to carry about the person any handgun, whether concealed or not."  S.C. Code Ann. § 16-23-20.

fair trial.  It is well settled that a "[g]rant or denial of a motion for . . . mistrial is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion."  United States v. West, 877 F.2d 281, 287-88 (4th Cir. 1989).  In order for the trial court's ruling to constitute an abuse of discretion, the defendant must show prejudice.  Id. at 288.  No prejudice exists, however, "if the jury could make individual guilt determinations by following the court's cautionary instructions."  Id.  "Absent . . . misconduct on the part of the Government counsel, the courts generally have discerned no reversible error where the trial court has acted promptly in sustaining an objection and advising the jury to disregard the testimony."  United States v. Johnson, 610 F.2d 194, 197 (4th Cir. 1979).

According to Goss, Agent Callahan's testimony prejudiced him because it improperly bolstered the trial testimony of Torres, who, Goss argues, gave conflicting testimony at the suppression hearing and at trial regarding his description of the person with the firearm.  Although he acknowledges the district court's curative instruction, Goss insists that the instruction was insufficient to correct the prejudicial effect of Callahan's testimony.  In response, the government denies that Callahan's testimony constituted improper bolstering, and

contends that even if it did, it did not prevent Goss from receiving a fair trial.

"[B]olstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury." United States v. Sanchez, 118 F.3d 192, 198 (4th Cir. 1997). We fail to see how the testimony of a witness actually presented to the jury amounts to improper bolstering, at least as we have defined the term. We think it more accurate to say that Agent Callahan's testimony was irrelevant.

In any event, we find that the district court rightly denied Goss's motion for a mistrial. Agent Callahan's testimony, which focused only on his role as a criminal investigator, was isolated, exceptionally brief, and did not comment directly on the evidence or Torres's testimony. Moreover, the independent evidence of Goss's guilt was overwhelming. Lastly, and perhaps most importantly, the court struck the testimony on Goss's motion and gave the jury a curative instruction, admonishing them not to consider the testimony for any purpose. We find no abuse of discretion in the district court's ruling.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED